FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 1 3 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X

MELISSA BERNACET,

              Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
----------------------------------------------------------------- X

09-CV-5367 (ARR)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiff Melissa Bernacet, proceeding pro se, commenced this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 1383(c)(3). She seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") that she was not disabled under the Act for the purposes of receiving Supplemental Security Income ("SSI"). Now before the court is the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons explained below, the motion is denied and the case is remanded.

## BACKGROUND

Plaintiff was born in 1970. R. 20. Prior to the onset of her alleged disability, she had completed two years of education at a community college and worked as a child-care provider and home health-care attendant. R. 22-25. According to plaintiff, her disability began in February 2006, after the birth of her sixth child by her fourth caesarian section. R. 152. She indicated that her ability to work was limited by abdominal pain, nausea, vomiting, diarrhea, low back pain, Castleman's disease, borderline EKG, and fibromyalgia. R. 28, 115, 150. Plaintiff's pain distracted her and made it hard for her to finish tasks that she started. R. 151. Her

1

prescribed pain medications have included Percocet, Celebrex, Hydrocodone, Vicodin, Ultram, Tylenol with Codeine, and Motrin, and they have caused side effects of drowsiness, nausea, and stomach pain. R. 28-29, 120, 141. Plaintiff stated that these medications reduced her pain from an eight to a seven on a scale from one to ten. R. 26-27. On certain medications, she testified, she was unable to make dextrous use of her hands. R. 29.

On April 6, 2009 plaintiff appeared pro se at a hearing before Administrative Law Judge Robert Dorf (the "ALJ"). R. 15-33. At the hearing, the ALJ asked plaintiff whether she could "lift and carry ten pounds," to which she responded in the affirmative. R. 30. She further testified that she required assistance in grocery shopping, but she could lift and carry a gallon and "maybe" two gallons. Id. In a post-hearing letter to the ALJ, dated April 10, 2009, plaintiff elaborated on her responses to the ALJ's questions at the hearing. R. 285-86. She wrote that she could lift five pounds but could not hold it for a long period of time. R. 285. She further wrote that she could not stand, sit, or walk for a long time because the pain it caused her. Id.

In addition to plaintiff's written communications and hearing testimony, the record before the ALJ contained medical records from plaintiff's treating sources, R. 11-12 as well as the report of a consultative examination by a physician, R. 12-13, and the physical residual capacity assessment of a Social Security disability examiner, who opined that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, R. 13.

Following the hearing, the ALJ issued a written decision, dated June 19, 2009, finding that plaintiff was not disabled under the Act. R. 8-14. In his decision, the ALJ found that plaintiff could engage in the full range of sedentary work, R. 10, defined as involving "lifting no more than 10 pounds at a time" and walking and standing only "occasionally," 20 C.F.R. § 416.967(a). In so finding, the ALJ dismissed plaintiff's statements concerning the intensity

and limiting effect of her pain and other symptoms as "not credible to the extent they are inconsistent" with the ALJ's residual functional capacity assessment. R. 13. Based on this assessment, the ALJ concluded that plaintiff could not perform her prior work, id., but that there were significant numbers of jobs in the national economy for persons of her age, education, work experience, R. 14 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.27). Accordingly, the ALJ held that plaintiff was not disabled within the meaning of the Act. Id.; see 20 C.F.R. § 416.920(a)(4)(v).

Plaintiff appealed the ALJ's decision, arguing that the ALJ failed to request and review certain medical records, failed to consider her fibromyalgia in his decision, and improperly concluded that she could lift twenty pounds when, she wrote, she could only lift ten pounds for a short period of time and, even then, not from the ground. R. 47. The Appeals Council denied plaintiff's request for review on October 2, 2009, making the ALJ's decision the final decision of the Commissioner on that date. R. 1. This action followed.

## DISCUSSION

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). "Substantial evidence" is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). An evaluation of the "substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. See Tejada v. Apfel,

167 F.3d 770, 773-74 (2d Cir. 1999). Accordingly, the reviewing court may not "substitute its own judgment for that of the ALJ, even if it might have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

In light of the non-adversarial nature of disability proceedings, the ALJ is under an important, affirmative obligation to fully develop the administrative record. Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Although the ALJ must develop the record whether or not a claimant is represented by counsel, "[w]hen a claimant properly waives his right to counsel and proceeds pro se, the ALJ's duties are 'heightened.'" Id. at 113 (citing Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir.1990)). In particular, the ALJ must make every reasonable effort to help an applicant get reports from the applicant's medical sources. 20 C.F.R. § 416.912(d). "The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a claimant's treating physician" because these sources are entitled to deference under the "treating physician" rule. Devora v. Barnhart, 205 F. Supp. 2d 164, 172-73 (S.D.N.Y. 2002). The ALJ must seek additional evidence or clarification when the "report from claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §416.912(e)(1).

The ALJ's affirmative obligation therefore includes the obligation to contact a claimant's treating physicians to obtain their opinions regarding the claimant's residual functional capacity. LoRusso v. Astrue, No. 08-CV-3467, 2010 U.S. Dist. LEXIS 33487, at *21 (E.D.N.Y. March 31, 2010); Myers v. Astrue, No. 06-CV-0331, 2009 U.S. Dist. LEXIS 61396, at *6 (N.D.N.Y. July 17, 2009). "Thus, when the claimant appears pro se, the combined force of the treating physician

4

rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991)

In this case, the ALJ failed to fully develop the record with information from plaintiff's treating sources. At the hearing, plaintiff informed the ALJ that he did not have a complete set of her relevant medical records. R. 30. In response, the ALJ advised plaintiff, "Just make a Xerox or send the records to me, whatever records you want me to consider. . . . I'll make a decision on May 1st, 2009, whether or not I receive the records." R. 31. Although the ALJ did not issue a decision until June 19, 2009, it is evident that he did not use this additional time to fulfill his affirmative, "heightened" obligation to fully develop the record with respect to this pro se claimant's medical records. First, the ALJ failed to consider all of the medical records that he received after the hearing. These records indicate that plaintiff was being treated for fibromyalgia, for which she was taking additional pain medications and experiencing additional side effects. R. 28, 285, 310, 313, 315. Yet the ALJ's decision lacks any reference to fibromyalgia or these medications. Second, the record is devoid of any residual functional capacity assessment from plaintiff's treating physicians. Instead, the only such assessment in the record was prepared by a non-treating, non-examining non-doctor. See R. 13, 254-59.

In addition, the ALJ should have inquired into plaintiff's statement at the April 6, 2009 hearing that she was scheduled to begin treatment with a psychiatrist the following week. R. 13, 27. In his decision, the ALJ reached the fifth step of the Social Security Administration's five-step, sequential evaluation process for evaluating disability claims. See 20 C.F.R. § 416.920(a)(4). At that step, the Commissioner bears the burden of proof to show that plaintiff

5

is able to engage in other gainful employment in the national economy. See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). "In the ordinary case," the Commissioner may meet his burden by resorting to the Medical-Vocational Rules, or "grids." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). The grids take into account a claimant's residual functional capacity, in conjunction with her age, education and work experience, and indicate whether the claimant can engage in any substantial gainful work existing in the national economy. Rosa, 168 F.3d at 77. Sole reliance on the grids is inappropriate, however, where a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations." Bapp, 802 F.2d at 605; see Rosa, 168 F.3d at 78. In this case, the ALJ relied on the grids to determine that plaintiff was not disabled. R. 14 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.27). If plaintiff suffered from psychological impairments, such reliance may have been inappropriate.

Finally, the ALJ failed to properly assess plaintiff's credibility with respect to her symptoms. "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. Because plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, R. 13, in assessing plaintiff's credibility he was required consider objective medical evidence and:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id.; see 20 C.F.R. § 416.929(c); Hall v. Astrue, 677 F. Supp. 2d 617, 631 (W.D.N.Y. 2009). Although the ALJ considered some of the required factors, such as plaintiff's daily activities, he did not address the probative "pain consultation" reports of plaintiff's physicians. See R. 310, 315. He also failed to adequately consider plaintiff's medications. In his decision, he noted only that Percocet caused plaintiff nausea, R. 13, but he addressed neither the effectiveness nor the side effects of plaintiff's numerous other medications, nor did he even consider the limiting effects of plaintiff's Percocet-induced nausea. Although an ALJ is not required to give exhaustive explanations of every enumerated factor, his credibility analysis must demonstrate that he considered the entire record. Hall, 677 F. Supp. 2d at 631-32; see SSR 96-7p. In this case, it is evident that he did not.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is denied, the Commissioner's decision denying plaintiff SSI is vacated, and the case is remanded for further administrative proceedings. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/Signed by Judge Ross/

_____
Allyne R. Ross
United States District Judge

Dated: June 13, 2011
Brooklyn, New York

7

**SERVICE LIST**

<u>Pro Se Plaintiff</u>
Melissa Bernacet
345 Taylor Street
State Island, NY 10310